UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Docket No.:
TATIANA BAKER,

                                      Plaintiff,        **COMPLAINT**

       -against-

                                                             **PLAINTIFF DEMANDS**
THE BRIDGE INC., SHERYL SILVER, *INDIVIDUALLY,*   **A TRIAL BY JURY**
AND ANTHEA SUTHERLAND, *INDIVIDUALLY,*

                                      Defendants.
------------------------------------------------------------------------X

      Plaintiff, TATIANA BAKER, by her attorney, JESSICA MASSIMI, ESQ., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"); and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against** on the basis of her **pregnancy**, **retaliated against** and **terminated** by the Defendants solely for objecting to this discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 29 U.S.C. § 2617 and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law

1

pursuant to 28 U.S.C. §§ 1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b), as the acts complained of occurred in that district.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC"), on or about March 22, 2022.

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated April 7, 2023, with respect to the herein charges of discrimination.

7. This action is commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. At all times material, Defendant THE BRIDGE INC. ("THE BRIDGE") was and is a domestic business corporation, with its primary office located at 290 Lenox Avenue, 3rd Floor, NY, NY 10027.

9. All times material, Defendant THE BRIDGE has and had more than 15 employees.

10. At all times material, Defendant ANTHEA SUTHERLAND ("SUTHERLAND") was and is the senior vice president of human resources at The Bridge.

11. At all times material, Defendant SUTHERLAND was Plaintiff's supervisor and had supervisory authority over Plaintiff.

12. At all times material, Defendant SHERYL SILVER ("SILVER") was and is the Senior Vice President of Development and External Relations of The Bridge.

13. At all times material, Defendant SILVER was Plaintiff's supervisor and had supervisory authority over Plaintiff.

14. Defendants The Bridge, Sutherland, and Silver are collectively referred to herein as

"Defendants."

## MATERIAL FACTS

15. Around March 30, 2020, Defendants hired Plaintiff, Tatiana Baker, as registered nurse in the Forensic Assertive Community Treatment Team at a pay rate of $84,000.00 per year.

16. Ms. Baker's job responsibilities included working as field nurse, providing injections to clients, providing them with medication, counseling and educating them for any services rendered by the team.

17. Earlier in the pandemic, Defendants scheduled Ms. Baker to work remotely 2-3 days per week and often scheduled another nurse to provide injections. This type of scheduling persisted for nearly 15 months before Defendants notified Ms. Baker that they were requiring her to return to the field full time.

18. In or around the third week of July 2021, Ms. Baker informed her direct boss, Sophia Vindeni, that she was pregnant with her third child.

19. In or around the last week of July or first week of August, Sophia Vindeni informed Ms. Baker that she would have to cease working remotely and would have to return to in person work full time.

20. On September 8, 2021, Ms. Baker's doctor gave her a note stating that, due to her current pregnancy and related complications, it was recommended that she work remotely.

21. On or about September 9, 2021, Ms. Baker provided this letter to human resources by emailing it to Asif Kamalodeen, Florence Biriwa, and Sophia Vindeni.

22. In this email, Ms. Baker provided the doctor's note and her doctor's contact information, and invited Defendants to contact her doctor if they required further clarification.

23. Thus, Ms. Baker requested a reasonable accommodation from Defendants.

24. As is evident from the fact that Ms. Baker worked remotely for much of the pandemic, Ms. Baker is and was able to perform her job responsibilities remotely, as had been done for the duration of the COVID-19 pandemic up until that point.

25. For any job responsibilities that needed to be performed in person, Defendants could have (and in the past, had) assigned other employees to perform these services.

26. Further, Defendants could have restructured Ms. Baker's responsibilities or provided her with a different position which would have accommodated her medical limitations.

27. Ms. Baker was able to perform the core and essential functions of her job.

28. For the remainder of that week, Defendants provided Ms. Baker with remote work responsibilities.

29. On September 13, 2021, Florence Biriwa from human resources called Ms. Baker and informed her that, in no uncertain terms, Defendants would definitely not accommodate Ms. Baker's medically necessary accommodation of remote work.

30. Thus, in no uncertain terms, Defendants refused to engage in the legally required interactive process and began disrupting Ms. Baker's work.

31. For example, on September 17, 2021, Sheryl Silver, Senior Vice President of Development and External Relations, called Ms. Baker while she was in the middle of a regularly scheduled weekly work meeting and told her, in sum and substance, that Defendants would not accommodate her request for a medically required accommodation.

32. Sheryl Silver also told Ms. Baker to take unpaid leave.

33. Thus, not only was Defendants refusing to engage in the interactive process or provide Ms. Baker a reasonable accommodation, Defendants was also engaging in adverse employment actions by attempting to force Ms. Baker to take unpaid leave.

34. At this time, Sheryl Silver also told Ms. Baker to abruptly log out of her meeting.

35. On September 18, 2021, Ms. Baker contacted her union representative who said that he would be file a grievance on Ms. Baker's behalf with the employer.

36. On September 26, 2021, the union filed a grievance on behalf of Ms. Baker.

37. On November 5, 2021, a union grievance meeting was held with between Ms. Baker, her union representative, Anthea Sutherland (Senior Vice President of Human Resources), Sheryl Silver (Senior Vice President of Community Support and Outpatient Programs), and Allison DeHaven (a direct report of Sheryl Silver).

38. At this meeting and since this meeting, Defendants have continued to double down on their refusal to accommodate Ms. Baker and have instead forced her to take unpaid leave.

39. Defendants have also continued harassing and gaslighting Ms. Baker, by baselessly accusing her of failing to provide requested information, which is demonstrably false as is evidenced from email exchanges between Ms. Baker and Defendants.

40. For example, on November 10, 2021, and only after the November 5th grievance meeting, Anthea Sutherland emailed Ms. Baker and asked her for additional information regarding her pregnancy and ability to work.

41. On November 12, 2021, Ms. Baker responded to Ms. Sutherland's email and provided her with the requested information.

42. On November 18, 2021, Ms. Sutherland emailed Ms. Baker back and falsely claimed, amongst other untruths, that Ms. Baker's responses did not sufficiently cooperate with

Defendants "concerning the accommodation, which has caused a breakdown in the interactive process."

43. This canned legal jargon rang hollow, however, since Ms. Baker had in fact in writing provided adequate information to Defendants regarding the need for an accommodation.

44. Rather than professionally inquire further with Ms. Baker – even assuming such inquiry was legitimately necessary – Ms. Sutherland instead sent a false accusation to Ms. Baker and further doubled down on the Defendants' refusal to fully accommodate the medical requests of Ms. Baker's doctor.

45. Specifically, Ms. Sutherland informed Ms. Baker, in sum and substance, that Defendants would either require Ms. Baker to work in the field two days per week or travel to a different job site which at least a two-hour commute each way.

46. As Defendants is aware, both suggestions are medically unsafe and impracticable given Ms. Baker's medical restrictions.

47. On November 19, 2021, Ms. Baker responded to Ms. Sutherland disagreeing with her false accusations of failure to cooperate and inviting Ms. Sutherland to advise Ms. Baker what specific information she believes is missing from Ms. Baker's responses.

48. Ms. Sutherland has not provided any further clarification.

49. Instead, Defendants forced Ms. Baker to take unpaid leave despite her written protestations and requests for accommodation.

50. Defendants constructively discharged Plaintiff's employment.

51. Ms. Baker felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

52. But for the fact of Ms. Baker's pregnancy and related disability, Defendants would not have treated her differently and would not have terminated her employment by forcing her to take unpaid leave.

53. Ms. Baker's performance was, upon information and belief, above average during the course of her employment with Defendants.

54. Ms. Baker has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

55. Defendants' actions and conduct were intentional and intended to harm Ms. Baker.

56. As a result of the acts and conduct complained of herein, Ms. Baker has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Ms. Baker has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Baker further experienced severe emotional and physical distress.

57. As a result of the above, Ms. Baker has been damaged in an amount in excess of the jurisdictional requirements of the Court.

58. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
(Against Defendant City of New York)

59. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

60. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy sex and gender.

61. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. Section 2000e et seq. by discriminating against Plaintiff because of her pregnancy and sex/gender.

62. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
(Against Defendant City of New York)

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a) provides it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.:

65. Defendants retaliated against Plaintiff as described above.

66. Defendants baselessly subjected Plaintiff to adverse employment actions prohibited by this statute.

67. Defendants had no valid business justification for the retaliatory and abusive action taken against Plaintiff following her engagement in protected activity.

68. Defendants' conduct was malicious, willful, outrageous, and conducted with fill knowledge of the law.

69. As such, Plaintiff has been damaged as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendant)

70. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

71. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

72. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

73. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

74. As such, Plaintiff has been damaged as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendant)

75. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

76. The ADA prohibits retaliation, interference, coercion, or intimidation.

77. 42 U.S.C. § 12203 provides:

    a. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    b. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right or protected by this chapter.

78. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff for engaged in protected activity by terminating Plaintiff.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against all Defendants)

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81. Defendants violated the section cited herein as set forth.

82. Plaintiff is entitled to the maximum amount allowed under this ordinance.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Not Against Corporate Defendant)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

85. Defendants violated the section cited herein as set forth.

86. Plaintiff is entitled to the maximum amount allowed under this ordinance.

## AS A SEVENTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against all Defendants)

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter."

89. Defendants violated the section cited herein as set forth for Plaintiff's complaint of and objection to discrimination.

90. Plaintiff is entitled to the maximum amount allowed under this ordinance.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
## VICARIOUS LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (Not Against Individual Defendant)

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor." It provides

   > a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
   > b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
   > c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

93. Defendant THE BRIDGE violated the section cited herein as set forth.

94. Plaintiff is entitled to the maximum amount allowed under this ordinance.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against all Defendants)

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an

individual's . . . sex/gender to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

97. Defendants violated the section cited herein as set forth.

98. Plaintiff is entitled to the maximum amount allowed under this statute.

### AS A TENTH CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against all Defendants)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

101. Defendants violated the section cited herein as set forth.

102. Plaintiff is entitled to the maximum amount allowed under this statute.

### AS AN ELEVENTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW
### (Not Against Corporate Defendant).

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105. Defendants violated this statute as set forth.

106. Plaintiff is entitled to the maximum amount allowed under this statute.

## JURY DEMAND

107. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107, *et seq.*, in that Defendants discriminated against Plaintiff based on her pregnancy, sex, gender, disability/perceived disability and retaliated against Plaintiff for objecting to and complaining of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and conduct and to otherwise make her whole for any losses suffered because of such unlawful employment practices and conduct;

C. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: Queens, New York
May 25, 2023

JESSICA MASSIMI, ESQ.

By: /s
_____
99 Wall Street, Suite 1264
New York, NY 10005
jessica.massimi@gmail.com
646-241-9800

15